UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES BLAKES,

        Petitioner,                      Hon. Gordon J. Quist

v.                                            Case No. 1:09-CV-718

DEBRA SCUTT,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Blakes' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Blakes' petition be **denied**.

## BACKGROUND

As a result of events that occurred on June 13, 2006, Petitioner was charged with armed robbery. (Trial Transcript, March 26, 2007, 4). Several individuals testified at Petitioner's jury trial. The relevant portions of their testimony are summarized below.

**Franklin Helton**

At approximately 4:30 a.m. on June 13, 2006, Helton was sitting in his wheelchair at the intersection of Stocking and Bridge streets. (Trial Transcript, March 28, 2007, 33-34). At some point, Helton removed money from his pocket and began counting it. (Tr. 38). Helton had a ten dollar bill, five one dollar bills, and some loose change. (Tr. 37). As Helton was counting his money, he was approached by Petitioner and another older man. (Tr. 37-38). Petitioner was riding a bicycle. (Tr. 37-38).

Petitioner walked up to Helton and asked, "What's up, man? You straight?" (Tr. 37). Helton testified that this was "street lingo" to determine if Helton was "lookin' to buy any dope." (Tr. 43). Helton told Petitioner, "Yeah, I'm straight, man, I don't need nothin'." (Tr. 37). The older man then placed a "little pocket knife" to Helton's throat, grabbed Helton's right wrist, and stated, "give me that money before I cut your throat, bitch." (Tr. 37-43). Petitioner then grabbed the paper money from Helton and rode away on his bicycle. (Tr. 37-43, 57). The older man "scrounged up" the loose change that Helton had been carrying. (Tr. 37, 57).

Helton "immediately" telephoned the police using his cell phone. (Tr. 37-40). Helton described the bicycling-riding assailant as a black male wearing a black t-shirt with "a white symbol of some sort right in the middle of the neck." (Tr. 41). Helton then proceeded to a grocery store located across the street from his location. (Tr. 46). A short time later, a police officer arrived at Helton's location. (Tr. 46). Helton was then transported, via police vehicle, to a nearby location to determine if a particular individual, detained by a different police officer, was the man that robbed him. (Tr. 46-47). When the police car arrived at the specified location, Helton identified the man in question (Petitioner) as his assailant. (Tr, 47).

**Adam Ickes**

As of June 13, 2006, Ickes was employed as a City of Grand Rapids Police Officer. (Trial Transcript, March 28, 2007, 78-79). At approximately 4:30 a.m. that morning, Ickes was dispatched to the vicinity of Stocking and Bridge streets to investigate an alleged armed robbery. (Tr. 78-79). Ickes was informed that one of the alleged assailants was wearing a "dark shirt with some kind of emblem" and was fleeing south from the area on a bicycle. (Tr. 79-80).

When Ickes arrived in the "general proximity of the robbery," he immediately observed Petitioner who was wearing a dark shirt and riding a bicycle. (Tr. 80-84). Because Petitioner "fit the description of the suspect that was given out by dispatch," Ickes decided to "make contact with him." (Tr. 81). By the time, Ickes maneuvered his vehicle to do so, Petitioner "had ditched the bike" and "was walking away." (Tr. 81-82). Officer Ickes testified that "it's not uncommon to see somebody riding a bike. . .but when somebody sees you and sees a spotlight and dumps the bike and starts walking [it] makes me a little suspicious of their actions." (Tr. 83). Ickes then stopped Petitioner. (Tr. 83-84). A search of Petitioner revealed five one dollar bills. (Tr. 85). Several of the bills were covered with blood and one was "ripped in half." (Tr. 85). Officer Ickes then took Petitioner into custody and waited while another officer transported the victim to the location. (Tr. 85-86). The victim arrived shortly thereafter and provided "a positive identification" that Petitioner was his assailant. (Tr. 85-86).

Ickes then transported Petitioner to the police station. (Tr. 90-91). After placing Petitioner in his squad car, Ickes activated his in-car video recording equipment. (Tr. 90-91). Officer Ickes never informed Petitioner that the alleged victim in this matter was in a wheelchair. (Tr. 86-87, 92-93). Also, when the victim was transported to Ickes' location, he never exited the

police vehicle. (Tr. 92-93). Nevertheless, while Officer Ickes was transporting Petitioner to the police station, Petitioner stated, "I'll get my day in court, I'll see you and that crackhead in the wheelchair in court." (Tr. 92). Ickes acknowledged that this particular statement could not be heard on the in-car recording that was accomplished while Petitioner was transported to the police station. (Tr. 108-10). Officer Ickes testified that such was likely the result of shortcomings in the equipment. (Tr. 108). Specifically, Ickes testified that "it wasn't heard because there's a microphone on my belt and one to the rear, but whichever one is hearing the most noise takes precedence. So it would hear the car radio noise in the front and myself." (Tr. 108).

**Darren Geraghty**

As of June 13, 2006, Geraghty was employed as a City of Grand Rapids Police Officer. (Trial Transcript, March 28, 2007, 112-13). Early that morning, Officer Geraghty responded to Officer Ickes' location to take photographs of Petitioner following his arrest. (Tr. 113).

Following the presentation of evidence, the jury found Petitioner guilty of unarmed robbery. (Tr. 162). Petitioner was sentenced as a fourth habitual felon to serve 5-20 years in prison. (Sentencing Transcript, May 9, 2007, 13-14). Petitioner appealed his convictions in the Michigan Court of Appeals, asserting the following claims:

> I. Did the trial court err reversibly by instructing the jury on unarmed robbery as a lesser included offense of armed robbery over defendant's objection where a rational view of the evidence did not support a conviction of that offense?
>
> II. Did the trial court abuse its discretion by overruling defendant's objection to the introduction of testimony that defendant falsely claimed that the arresting officer assaulted him?

> III. The defendant was denied the effective assistance of trial counsel by violating the defendant's Sixth Amendment right to present a defense, where counsel failed to: (1) call the defendant's witnesses, and (2) failed to object to false and perjured testimony made by the arresting police officer.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Blakes*, 2008 WL 3009939 (Mich. Ct. App., Aug. 5, 2008). Asserting the same claims, Petitioner moved in the Michigan Supreme Court for leave to appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions presented should be reviewed by this Court." *People v. Blakes,* No. 137457, Order (Mich., Jan. 9, 2009). On August 5, 2009, Petitioner initiated the present action in which he asserts the following claim:

> I. Petitioner was denied the effective assistance of trial counsel by violating Petitioner's Sixth Amendment rights by failing to call defendant's witnesses and investigate and failed to object to false and perjured testimony made by prosecutor and police officer.

## STANDARD OF REVIEW

Blakes' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at

6

411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, - - - S.Ct. - - -, 2011 WL 1225705 at *8 (Apr. 4, 2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue."

*Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

**I.     Exhausted Claims**

Petitioner asserts that his constitutional right to the effective assistance of counsel was violated by his trial counsel's: (1) failure to call certain witnesses at trial, and (2) failure to object to certain testimony.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo*, 131 S.Ct. at 739 (quoting *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Premo*, 131 S.Ct. at 739 (quoting

*Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 131 S.Ct. at 740. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the Supreme Court recently concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (internal citations omitted).

A.   Failure to Investigate and Call Witnesses

Petitioner asserts that his trial counsel rendered deficient performance by failing to investigate and question at trial the following individuals: (1) John Lockridge, (2) Mike Devoss, (3) Lendall Bibbs, and (4) Todd Bowers.

In a March 6, 2007 letter to Petitioner, counsel stated that Bibbs and Bowers "have already been interviewed" and that Lockridge and Devoss would be interviewed either by herself or her investigator. (Dkt. #2, Appendix F). Petitioner offers no evidence that Lockridge and Devoss

were not interviewed as counsel asserted. Thus, Petitioner cannot establish that counsel failed to interview or investigate these individuals. Petitioner likewise cannot establish that counsel's decision not to question these individuals at trial was anything other than the exercise of legitimate trial strategy. In short, Petitioner has failed to demonstrate that counsel rendered constitutionally deficient performance.

Even if the Court assumes that counsel rendered deficient performance in this regard, Petitioner has failed to demonstrate that he was prejudiced thereby. Petitioner has failed to present any evidence that any of these individuals possessed any first hand knowledge of the relevant events or could otherwise offer admissible testimony that might have resulted in a different outcome. The Michigan Court of Appeals rejected this claim, concluding as follows:

> As noted, defendant alleges that defense counsel failed to adequately interview and call certain witnesses. Defendant attached to his brief a letter from defense counsel acknowledging defendant's concerns regarding the witness list. In her letter, defense counsel asserts that she has interviewed or will interview the witnesses specified by defendant. Defendant presented no record evidence that defense counsel failed to interview any witnesses. Whether to call specific witnesses is a matter of trial strategy, and it is assumed from the lack of testimony from the additional witnesses that their testimony would not have been helpful to defendant's case. Further, defendant has failed to indicate the substance of the testimony the additional witnesses would have provided. No mistakes are apparent on the record, and defendant has not shown that he was denied the effective assistance of counsel or that a remand is warranted.

*Blakes*, 2008 WL 3009939 at *3 (internal citations omitted).

The decision by the Michigan Court of Appeals rejecting this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. It is likewise not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

B.     Failure to Object

As noted above, Officer Ickes transported Petitioner to the police station. Ickes testified that while he was transporting Petitioner to the police station, Petitioner stated, "I'll get my day in court, I'll see you and that crackhead in the wheelchair in court." Petitioner asserts that introduction of this evidence was improper because the in-car video recording did not confirm that Petitioner made the statement in question. As noted above, Ickes testified that the comments in question were not recorded due to deficiencies in his in-car recording equipment. Petitioner asserts that his attorney's failure to object to this testimony constituted ineffective assistance.

The jury, as finder of fact, was tasked with assessing the credibility of witnesses and determining what weight (if any) to afford their testimony. The Court discerns no legitimate basis for objecting to the testimony in question. As the Michigan Court of Appeals observed, an attorney cannot object on the ground that she believes a witness is testifying untruthfully, as such is a matter for the jury - not the court - to resolve. Counsel cannot be faulted for failing to assert such a futile objection. Thus, Petitioner has failed to satisfy the first prong of the analysis. Moreover, even if the Court assumes that counsel was deficient for failing to object to this testimony, Petitioner cannot establish that he suffered prejudice therefrom given the quantum of other evidence of his guilt that was properly admitted. The Michigan Court of Appeals rejected this claim, concluding as follows:

> Finally, defendant submits he was denied the effective assistance of counsel when defense counsel failed to object to Officer Ickes' testimony that defendant referred to the victim as the "crackhead in the wheelchair" while being transported to the jail. Defendant alleges that the in-car recording of the ride to the jail, which was played for the jury, did not contain this statement.
>
> Generally, conflicting testimony or a question as to the credibility of a witness is an insufficient basis for granting a new trial. However, under certain circumstances, such as when the testimony contradicts

> indisputable physical facts or law or is patently incredible, a court may grant a new trial if there is a real concern that an innocent person might have been convicted. If the evidence is nearly balanced or is such that different minds would naturally and fairly arrive at different conclusions, the court may not disturb the jury's verdict. "The veracity of a witness is a matter for the trier of fact to discern." Counsel cannot object simply because he thinks a witness is lying. A lawyer is not deemed ineffective for failing to make a futile objection.
>
> Officer Ickes included in his police report that, during defendant's transport to jail, defendant stated, "I'll get my day in court, I'll see you and that crackhead in the wheelchair in court ." However, this statement was not clearly audible on the recording that was played before the jury. On cross-examination of Officer Ickes, defense counsel asked him why she could not hear this statement on the in-car recording. Officer Ickes explained that the recorder picked up the loudest noise in the car and, at the time of the contested statement, the car radio was likely louder than defendant.
>
> Whether or not defendant made the contested statement was an issue of fact for the jury to determine. Defense counsel raised before the jury the possibility that Officer Ickes lied about whether defendant made the "crackhead in the wheelchair" comment. The jury heard argument in support of both views of the evidence and it was for them to determine Officers Ickes' credibility. Any objection would have been futile. Therefore, defendant was not denied the effective assistance of counsel.

*Blakes*, 2008 WL 3009939 at *4 (internal citations and footnotes omitted).

The decision by the Michigan Court of Appeals rejecting this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law. It is likewise not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

**II.       Unexhausted Claims**

Petitioner also asserts two additional claims that were not presented in his state court appeals. Specifically, Petitioner asserts that his attorney was ineffective for failing to object to certain testimony by Officer Ickes. Petitioner also asserts that his attorney should have objected to the playing of the in-car videotape recording discussed above. Petitioner's failure to properly exhaust these claims notwithstanding, the Court recommends that such be denied. *See* 28 U.S.C. § 2254(b)(2) ("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

On direct examination, Officer Ickes testified that he stopped talking to Petitioner as soon as Petitioner "said he wanted to talk to an attorney." (Trial Transcript, March 28, 2007, 86-87). Petitioner argues that his attorney was ineffective for failing to object to this testimony on the ground that its introduction violated his constitutional right to due process, contrary to the Supreme Court's decision in *Doyle v. Ohio*, 426 U.S. 610 (1976). Petitioner also asserts that the playing for the jury of the in-car videotape likewise violated his right to due process and that his counsel's failure to object to such also constituted ineffective assistance.

In *Doyle*, the Court held that "the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619. As the Court explained, "while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Id.* at 618. Accordingly, as the Court concluded, "it would be fundamentally unfair and a deprivation of due process to allow the arrested

14

person's silence to be used to impeach an explanation subsequently offered at trial." *Id.*

As the Supreme Court subsequently reiterated, the "fundamental unfairness" identified in *Doyle* was not any and all use of a criminal defendant's silence as substantive evidence of guilt, but rather the use of a defendant's post-Miranda silence as substantive evidence of guilt. *See, Jenkins v. Anderson*, 447 U.S. 231, 238-40 (1980) (no constitutional violation where defendant was impeached by his pre-Miranda silence); *Fletcher v. Weir*, 455 U.S. 603, 603-07 (1982) (no constitutional violation where defendant was impeached with post-arrest, but pre-Miranda, silence).

The Court agrees that Ickes' testimony constituted a comment on Petitioner's apparent choice to remain silent. *See Combs v. Coyle*, 205 F.3d 269, 279 (6th Cir. 2000) ("[a]lthough Combs's statement referred not to silence but to his right to an attorney, the admissibility of the statement is properly analyzed as a comment on prearrest silence"). The Court also finds that the playing of the in-car videotape could likewise be considered evidence regarding Petitioner's apparent choice to remain silent.

Petitioner's claims fail, however, because there is no evidence that Petitioner had been informed of his Miranda rights prior to making the statement to which Ickes referred or prior to being placed in Ickes' police vehicle. In fact, the record contains no evidence that Ickes ever informed Petitioner of his Miranda rights. All the record reveals is that once Petitioner stated that he "wanted to talk to an attorney," Ickes stopped speaking with Petitioner and simply transported him to the police station. Petitioner has, therefore, established only that the evidence in question constituted a reference to his post-arrest, but pre-Miranda, silence, which does not violate his constitutional rights. *See Doyle*, 426 U.S. at 618-19; *Jenkins*, 447 U.S. at 238-40; *Fletcher*, 455 U.S. at 603-07; *United States v. Christian*, 404 Fed. Appx. 989, 992-93 (6th Cir., Dec. 21, 2010) ("the

record is silent with respect to whether or not Christian received Miranda warnings, and, absent Miranda warnings, comments on a defendant's post-arrest silence do not violate due process").

Because the introduction of the evidence in question did not violate Petitioner's constitutional rights, Petitioner's counsel cannot have rendered deficient performance for failing to object thereto. The undersigned recommends, therefore, that this claim be rejected.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Blakes' petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: November 28, 2011         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge